The next case on the calendar for argument is Armstrong v. WB Studio Enterprises. Counselor or appellant please approach and proceed when ready. No rush. Mike Fryman, I speak for Brian Armstrong. Martin Luther King said, Injustice anywhere... Injustice anywhere is a threat to justice everywhere. Martin Luther King also said you should judge a person not by the color of their skin but on the content of their character. This is a case about a large corporation admitting they are judging people on the color of their skin. And the injustice before your honors today is disposing of a race discrimination case without a trial by jury. And that is the injustice that we are here to discuss. Counsel on the particular facts of this case, what is the evidence that there was a race based decision? The evidence comes from Christy Cecil who was in charge of approving all the positions on the show. The judge admitted to the employee that the illegally vicious rumors he heard were true. And that they had to replace Steve Silver, the director of photography, with Patty Lee. How is that discrimination against him though? Because they replaced Steve Silver because he was a white department head. And Al Higgins, the executive producer, sent an email saying... So what evidence is there in the record that he was replaced? Mr. Silver was replaced because he was a white man. The evidence in the record is as follows. Steve Silver was the director of photography which is a department head. And Al Higgins, the executive producer, sent an email saying, I don't want all the department heads to be white. And so after he sent that email, Steve Silver was replaced by a person of color, Patty Lee. And Christy Cecil admitted to the plaintiff that you weren't on the next show because Steve Silver was replaced by Patty Lee. So I guess, who is the hiring authority for Mr. Armstrong? Or for the next production? There were several individuals including Al Higgins, Chuck Lorre, Christy Cecil, Robin Green. But all of those would have to have been involved in the actual hiring decision. So to pick up on that, where is there evidence that there's even a genuine dispute that any of them had authority over whether to hire Mr. Armstrong? It's in the evidence that I submitted before the court. Chuck Lorre and Al Higgins approved of the selections as brought to them by Christy Cecil and Robin Green. And that's in the evidence. They all admitted to that in their depositions. Where is the evidence in the record that they approved specifically of the hiring of the person that Mr. Armstrong says was selected instead of him? That's... So, I'm sorry. Your Honor, repeat the question. Generally, in a racial discrimination case, you showed that you were a member of a protected group, there was an open position, you were qualified for the position, and someone who was not of your protected group was hired in place of you. So who is the person that was hired instead of Mr. Armstrong? Correct. So her name is Michelle Crenshaw, and she's African American. And she was the... So she wasn't the only one hired. Correct. So there were four television camera operators for these Chuck Lorre shows. Three of them identified as white males, correct? Two are white and... They identified as white males. That is how you would characterize them. Three of them identified themselves as white males. And so you're saying those three were not hired in place of Mr. Armstrong, but the African American woman was. So what proof do you have that the African American woman was the one who was hired to replace Mr. Armstrong, instead of Mr. Armstrong? They were both in the same camera position, which is camera operator X. There's four different... All four of them were. So what's the evidence that this particular one, of all of the four who were hired, was the one who was hired to replace Mr. Armstrong? Okay. So to answer the question, I have to give a little history of the facts, the factual circumstances. So here, Mr. Armstrong was a TV camera operator, one of four TV camera operators for every single show on Two and a Half Men. He was a TV camera operator for every single show on The Big Bang Theory, one of four. He won an Emmy for his work on The Big Bang Theory. And specifically, there's four different camera operators. I think it was camera operator X, A, B, C, X. Something like that. And here, the African American person got the job instead of Mr. Armstrong, because it was camera operator X. You're saying he was camera operator X. She was hired as camera operator X on a different show. And it was on the same set. Was that in the record? That she was hired in the same camera operator position that he was? I didn't see that in the record. Where is that in the record? I could pull up my brief real quick. Well, your brief doesn't help me. I need something from the record. You're saying that in the brief doesn't raise a material issue of fact. I think I mentioned camera operator X in the brief. But I'm interested in where is the evidence in the record that this particular camera operator was hired in the position that he would have been hired in? There are four TV camera operator positions. I've heard you. But what I'm asking you is, where is the evidence in the record that she was hired in position X and he was eligible for the position? In other words, they had parallel camera positions. Where is that in the record? I didn't see that. Let me pull it up real quick. Let me pull it up real quick. So the June 9th, 2019 email from Ms. Lee to Green and Cecil identifies ABC and X with Ms. Crenshaw in the X camera operator. But why does that tell us anything about whether in a world where Mr. Armstrong had not expressed any interest in it, there are legitimate racially neutral reasons for Ms. Crenshaw and Ms. Lee to hire either people that she'd worked with or had been interested in working with? I don't think there's a genuine, is there any dispute that she'd also expressed interest in working with Mr. Armstrong? Why does that establish the requisite race-based hiring decision? If we're just looking at Ms. Lee, because I'm just not sure that the higher-ups, at least that you've established that the higher-ups, that their decisions would kind of be covered by Section 1981 if the record shows that Ms. Lee made the decision. Well, if Ms. Lee is following orders from higher-ups. Well, so where's that in the record? Again, I'm trying to stay close to the record here. And correct me if I'm wrong, but the sequence that's actually in the summary judgment record is that Ms. Lee's hired and Ms. Lee goes out and hires four camera operators, two or all of them through outreach, before Warner hears any contact from Armstrong that he's interested in the position. All four of them, Ms. Lee says she hires for, again, not knowing that Mr. Armstrong's out there and interested in the job, is hiring for perfectly legitimate, non-racially based reasons. Before you do that, could you answer my question? I ask you, where in the record? On page 27 of the brief, I cite to, Lee understood that Michelle Crenshaw would become camera operator X. What's the record site? I think it's 4ER662. I have to double check. Okay, I'll check it for you. So could you proceed? Well, I guess just to square that up, and then where's the record site that Mr. Armstrong had just generally been an X camera operator? Let me pull that up real quick. Or anything establishing that, again, we have to kind of take the industry as we find it with respect to Section 1981, in terms of what their hiring practices are. I'd like to just better understand why there would be an expectation that there's a pool of X cameramen, and then a pool of A cameramen, B camera operators, C camera operators. Well, maybe you do have a chance to come up on rebuttal, so that might be something you can look for. While you're looking for that, counsel, I'm at ER662, and that's a disputed fact, the fact that Michelle Crenshaw was a person of color to become camera operator X. Correct. Right, and it's up to the jury to decide the facts. But you have to raise the material issue of fact before you get to a jury. Yeah, and look, and so here you have, if you look, you have to look at the whole policy of increasing the amount of people of color, but not increasing the amount of white people, and encouraging Warner Brothers to hire people of color instead of white people. And that starts with the policy, the commitment that was posted on the door. Then you have the emails, the executive producers, how many black people are on your list, I don't want them all white. This appears to be a novel issue, the question of the commitment. We have some district court cases on this. Do you have any kind of authority from other courts of appeals, or kind of what your best case will be? I know lawyers don't love that question. But how we would, if, for example, in a world in which we might view Ms. Lee as the only relevant decision maker, and the only question of fact in the record is she didn't have contact with any of the higher ups about any of these issues, other than suggesting that she supported, or might have agreed with, the commitment. What's your best case saying that the commitment itself, without any other evidence, is enough to create a genuine dispute of material fact as to whether that was a race-based reason that Ms. Lee incorporated in the hiring decision of Mr. Armstrong? Yeah, Chrissy Cecil said the illegally vicious rumors you heard are true, Robin Green. I just want to hear about the commitment. So lots of companies, the district courts say this. Lots of companies have statements, diversity commitments like this. Do you have a case that said that that's enough to establish that? That a hiring decision maker who subscribes to that diversity commitment at least raises a genuine issue as to whether any hires that she makes are race-based? You start off with the University of Michigan case with Sandra Day O'Connor, where she said affirmative action was okay. That was only to remedy past discrimination. Affirmative action is a pretty broad term. Are you asserting that there's anything about this particular hiring decision? This is not a policy that says that any particular decision must be based on race. It's a general inclusion policy. It's not a general. It actually says that we are going to work with our writers, directors and producers to take steps to implement this commitment. And they posted it on the door, which is essentially saying whites not welcome here. And he took a picture of it. Essentially he's doing a lot of work in that sense. What is the evidence that the commitment committed them to any particular action? Well, Patty Lee admits in her deposition that she followed the commitment in staffing the show. But not with respect to any hiring decision. She was hired because of the commitment. I've proven that. You haven't proven anything. You haven't had a trial, so you haven't proven anything. Right, and that's really why I'm here. It's just the right to trial by jury for this. You're saying you raised the material issue of fact that Patty Lee was motivated to hire someone other than Mr. Armstrong, even though she hired three men who identified as white males. Yes, because she understood one of the males to be racially ambiguous. So she admitted that in her deposition. So he identifies as a white male after Warner Brothers lawyers have them write a declaration saying that. That's not fair. It's not fair to say that the council had him write that. Well, I assume that it was done by the law firm. Maybe I'm wrong. But you've said followed the commitment. And the testimony is that maybe at best it's a pretty choppy deposition. But at best that she may agree with some or all of the commitment and that she believes in having an inclusive set. So follow, I think as you suggested, is a command. I guess I'm still not seeing where the commitment is viewed as a command, a company policy that should affect a particular hiring decision. And I guess maybe I don't read the 14th Amendment cases about affirmative action kind of the same way in terms of what the court's looking at. I'm looking for just an employment action where there's a diversity commitment and that that has been used as a basis for racial bias in hiring. Yeah. So here you have the Harvard admissions case, which essentially said you can't use race as a factor. You have the voting rights case. There is a genuine dispute there based on a lot of statistical evidence, which I don't think is present here. OK. So there's SFFA. Yeah. Right. And then you have the direct evidence, though, that they were implementing the commitment by replacing Steve Silver. So is every employer that has a diversity commitment, why wouldn't every employer who has a diversity commitment face trial? Trial any time an employee who doesn't get a particular position is able to show that someone else got it? I mean, how do we draw that line? That's what that's what I'm worried about. I hope you understand. Where would we draw that line? We don't even have to get there because of all the other direct. Well, if we're just looking at Lee and the commitment. Yeah. Just Lee and the commitment. I've shown through circumstantial evidence that the real reason Lee selected persons of color and the real reason that they increased persons of color was to make the cast feel comfortable because it was a black African-American cast. Not all. Not all. No, but I'm not making this up. You say it was a black African-American cast and that's not true. Warner Brothers producer. I've watched that show. It's not. Yeah, I understand. Warner Brothers producer admitted that she was was instructed to find people of color to make the cast feel comfortable. And then she said, it's like getting the food they want and craft services. It's like getting the dressing room they want. They want them to be happy. The question was about the commitment. And so like this other evidence may be helpful to you, but I'm also interested in the answer. Yes, I'll tell you. Right. Yes. You have to look at this specific commitment. USC 1981 says you cannot discriminate on the basis of color, period. There's no way to know. And there's an intentional requirement. Correct. For USC 1981. Yes. I don't know. I don't know that there is. But I think either way, we have the sufficient facts. So here the commitment on its face is discriminatory. And Patty Lee admitted to following the commitment. But why is it that the commitment paragraph two of the commitment, which seems to be in paragraph one is just sort of. I mean, it's all fairly vague and aspirational. But but the closest it comes to something concrete is in paragraph two, where it says that they're going to use best efforts to ensure that diverse actors and crew members are considered for film, television and other projects. Do you. It doesn't say anything about the ultimate hiring decision. If you look higher in the commitment, it says you need to increase the amount of people of color behind the camera. And then we're going to work with our writers and producers to implement this. So by saying we're going to increase one group, you're excluding another group. And it doesn't matter what the color is. Race discrimination is. John Roberts said if you want to stop discriminating on the basis of race, stop discriminating on the basis of race. So, you know, the law has evolved to a point where this is no longer legal and it's no longer lawful. And so a lot of these diversity program excuse me, there's nothing wrong with diversity. There's something wrong that would try to increase one group. I think it's, you know, a lawyer reviewing this with awareness of, you know, what was coming in SFFA would probably have advised them to write it a little bit differently. But that doesn't mean that it shows that they took any particular action in any particular case, because it doesn't, you know, despite its name, it doesn't actually commit them to do anything in particular in any particular hiring decision. So that's that seems like the evidentiary gap that is a significant issue in your case. Well, I think when you post it on the wall, you put in every new higher paperwork. And then you have people of color on a cast that need to feel comfortable with having people of color behind the camera. At the same time, the commitment comes out while also having e-mails. As I said before, how many white black people are on your list? I don't want them all white. It shows circumstantially that they were following the commitment. And I can show I can use circumstantial evidence, especially on a motion for summary judgment, when you're looking for all reasonable inferences in favor of the non moving party at the trial court. It feels like all the you know, it kind of felt like all the inferences were on the moving party. Which is the opposite of what the trial courts are done. So are you familiar with the Comcast Corporation case? Yes. Doesn't it say for 1981 race has to be a but for factor? Yes. OK. And you don't think that's different than Title seven where you can use all of the pretext and a circumstantial but for you have to show that's the actual cause. I agree with you. I think you think you raise a material question of fact about that. Yes, I do. I definitely do. I've shown that it's the but for cause because Ben Steeples admitted that he was instructed to start with to start finding people who are black, male or female, and then go from there. But Patricia Lee. I mean, but I'm sorry. I'm thinking of somebody else. Miss Lee didn't say that. And she was the person who hired. Correct. This is this is evidence coming from her predecessor that was instructed to follow the commitment by the same higher ups that were managing Patty Lee. So it's it is a group effort. And we can't just look at Patty Lee because she is has pressure from higher ups to to do this. I mean, I mean, are we just imagine that this didn't happen, that the cast didn't say they want black people behind the camera? I mean, like, did this happen? This this is real. Can I ask you the sentence, the next sentence in the commitment after the one I just read says we'll engage with our writers, producers and directors to create a plan for implementing this commitment. Does the record contain the plan for implementing the commitment? The record contains the email showing that they were implementing the commitment by how many black people. That's not I mean, the commitment seems to did. Are you aware of or does the record contain evidence of such a concrete plan? Yes. The emails from Al Higgins, the deposition test email from. You mentioned some of the affirmative action cases. There are actual plans that talked about how to weigh different factors and what the goals were in terms of percentages. That's right. That would be like a plan that's written down with all of these criteria in there. Was there anything like that in the record? Nothing like that. No. But, you know, I think, you know, the the fact, though, that they are talking about, you know, how many black people are on your list? I don't want them all white. Here are our African-Americans as of now. This doesn't touch upon our other racial minorities. So under your view, any time a person of color is hired instead of a white person would raise an inference that there is discrimination. No, no. And that's not the case I'm bringing. I'm bringing a case of direct evidence of race discrimination. I'm not just saying this is what the trial court said. This is what Warner Brothers is trying to say. I'm arguing. And I told the trial court this. I'm not making that argument. I'm not saying every time there's a diversity policy, there's a legal violation. I'm saying in this case, I have specific emails of direct evidence. I have Christie Cecil saying that the illegally vicious rumors you've heard are true. We had to replace Steve Silver. And then is there any evidence that the screen show was less qualified than your client? Yes. He was an Emmy Award winner. He had he had filmed every single episode of the Big Bang Theory in two and a half men. Patty Lee had never worked with Michelle Crenshaw before. She had never worked with Mr. Armstrong either. That's correct. That's correct. But it's not it wasn't just my argument is that it wasn't just Patty Lee's decision. This was a group effort of pressure to hire people of color. Is there something in the record that would show us that hiring policy? So I guess we have an email where she says, here's who I've hired. And I don't recall any other. I mean, maybe there was approval or but but is there any policy that tells us that anyone else made this decision? It's chargeable with having made this decision. Yeah. Other than Miss Lee. Yeah. It shows that the decision was the people who were involved in the decision start with Patty Lee. Then it goes up to Robinson Green and Christy Cecil, both of whom made direct evidence of discrimination. Right. But they weren't involved in the in the hiring. Right. It could be true that I think the cases tend to draw a distinction. Who's the hiring authority? She was the one who chose these people. And then there's no kind of further. Is there any further discussion about in either kind of before or after charging Patty Lee within hiring the in making this hiring decision? Here's what you have to do. It's just a kind of reporting up thing. Is it am I missing something in the record that that establishes that it was Warner Brothers policy that somewhere that she had to hire? I mean, again, set aside the commitment that she had to in her decision, she had to hire these other. She had to hire particular people because the record seems to just say that she decided to hire and then other people kind of signed off but weren't involved in the process. Yeah, right. So they this is a reasonable inference on a motion for summary judgment that the. But it's not quite a matter of fact. It's it's it's more of a matter of kind of law or the practice in terms of who had the authority. And and I guess I'm wondering, why is there any dispute as to whether Patty Lee had authority? She was the one the sole person who picked these people. These people did not interview with a board with Cecil and Green. They they did not have to sign off like she hired them. And usually at least in the title seven context, as you pointed out, Section 1981 and the law is a little thinner. But we have to be able to separate because the person showing discrimination that intent has to be a person. You have to point to who actually has that authority. And I guess I'm just missing where you're seeing that other people informed her decisions made her hire those people. Yes, it was. My argument is that they that Warner Brothers instructed Patty Lee to hire people of color to make the cast feel comfortable, as I've shown through circumstantial evidence, even though I don't have the smoking gun of a recording of them saying it. We've taken you way past your time. We'll give you a minute for rebuttal. May it please the court. Adam Levine for the defendants and appellees there. There's a lot to unpack from my friend's initial arguments. But I would like to start with this. There are three very crisp, dispositive issues which ultimately undermine Mr. Armstrong's claims of discrimination and retaliation. The three issues, I'll list them and then I'll discuss them, are one, he has not been able to identify evidence of an open position. Two, he's not been able to identify evidence that he actually applied or let it be known that he was interested in an open position. And number three, Mr. Armstrong has submitted no evidence that he was denied an open position for which he applied based upon his race. So as to the open position and applied, I know that some of our cases have said that, but that can't possibly be an element of establishing under Section 1981 at least a discrimination in making performance modification termination of contracts. I mean, as I understand it, some parts of the movie industry are different, that there's not an application process. So you're saying that if someone, even with discriminatory intent through affirmative outreach, picks people based on their race, it's not actionable under Section 1981 because there wasn't an application or an open position? Well, Your Honor, if there's no open position, I think as a matter of logic, a plaintiff cannot demonstrate that but for his race he would have gotten the position. The open position might be slightly different than the application because I think the claim here is that he was not considered by Ms. Lee. But none of the other people applied either. Some of them had reached out, some of them didn't. Your Honor, well, let me, if I may, address the application requirement. We believe it's a requirement, but I think that... It's a requirement of Section 1981 that you can't, if, I mean, in other words, there has to be an open procurement process or something for contracting for 1981. Well, here's the reason why, Your Honor, and I believe it's baked into the concept of pretext. Because if the plaintiff is going to prove that but for his race he would have obtained the position, then the plaintiff has to prove that the decision maker knew about him at a minimum. Now, could it be a formal application? Yes. Could it be other ways of applying? Because I think, Your Honor, it's correct in suggesting that in the entertainment industry, unlike perhaps other industries, people don't mail in their resume or their CV. But instead, in the entertainment industry, the decision makers, through one way or another, become aware of an interest on the part of, we'll call them applicants. Did all four of the operators who were hired here affirmatively express an interest to Ms. Lee when she was under consideration? She just reached out and hired some people. She might have had good, perfectly legal reasons to do so, but that happens. Does Section 1981 not have a – I mean, in other words, she's making a contract offer to these people before they are soliciting the offer. Why isn't that equally actionable under Section 1981? Well, so there's several layers to the onion, if you will. The first layer is that Ms. Lee was aware of all four of those individuals and was aware that all four of those individuals were interested in camera operator positions. In contrast, she testified that she doesn't recall ever even meeting Mr. Armstrong. Well, he says that they might have, and that would create a dispute, whether it's material or not. We'll see. He says that they might have met or that they did meet, but she doesn't recall ever meeting him. She didn't have him in mind at all when she was filling the position, and that's in the record, Your Honor. And consequently, how can she discriminate against a person who's not even in the list of applicants that she's considering? Well, again, there are no applicants. I'm sorry. Are you by chance familiar with our decision in Calderon against Circle K? It was just last week, so they would – No, Your Honor. I apologize. I'm not – No, that's totally understandable. So that was an ADEA case, and we said there that what I think was consistent with the law all along, as Judge Johnstone was just articulating, that if the employer doesn't solicit applications and doesn't announce that the position is available, then you're not required in establishing a prima facie case to show that you applied for the position if the employer didn't have a formal application process. So I guess I have the same question, which is why do we think that 1983 – or 1981, excuse me, includes the submission of an application as a requirement for bringing a case? Your Honor, and I want to also answer Judge Johnstone's question about the other four, and I'll do that, but I'll answer this one and then turn to that one. I think that the application requirement, whether it's part of the prima facie case or baked into pretext, is implicit in the standard that needs to be applied. And the reason for that is that ultimately it's the plaintiff's burden to prove that but for, in this case, the fact that he's white, he would have obtained the position. And if the decision maker didn't even consider him, didn't know of him, doesn't recall ever having met him, he expressed no interest, whether it be a formal application or even saying, hey, Patty, if you have a job, I'd like it, if none of that is in her consciousness, how could she have made a decision to hire somebody else because of their race? Because Mr. Armstrong wasn't even in the array of people under consideration. And to go back to Judge Johnstone's question about the other four, two of them, Davison and Purdy had previously worked with Ms. Lee as camera operators on productions in which she was the director of photography. Michelle Crenshaw, the target of Mr. Armstrong's issues, had previously spoken to Ms. Lee about working on her productions and Ms. Lee had previously sought to have her work on one of Ms. Lee's productions, but Ms. Crenshaw wasn't available. And Mr. Hinojosa had affirmatively sought out Ms. Lee to ask if there were any opportunities on her productions. So all four of them were in the pool that was being considered by Ms. Lee. Mr. Armstrong was nowhere in the pool. And if there's no requirement at all that the decision maker know of the plaintiff or at least be aware of the plaintiff's interest in a position, then it would open the floodgates of potential plaintiffs. I guess the converse concern is that if an application or if we look at only the pool is available, you could have a situation where there's, for purposes of Section 1981, racially biased outreach or that the pool is just defined by, incidentally defined by that, that that's the pool. And then the fact that someone is not in the pool. I mean, it can't be that she didn't know about Mr. Armstrong if there were a situation where the pool itself was constructed on a racial basis. I don't think that's quite the allegation here, but you're taking a position here that Section 1981 contains some sort of baked in job hiring process where it only talks about contracts and whether you're going to offer. I mean, I think his complaint simply framed is you offered them a contract and you didn't offer me a contract, and that was based on race. Why isn't that form enough? Well, we could take this outside the employment context and just look at contracting. If somebody were claiming under 1981 that they were denied a contract because of race, but yet the person, the other contracting party had never even heard of them at all. Let's say it's a cake maker, and the cake maker happens to be a Caucasian-owned cake business and is claiming that the restaurant isn't buying cakes because they're Caucasian-owned and that there was a desire to diversify, but that the restaurant had never even heard of this baker. The baker is some obscure bakery that had never sent marketing materials, solicitations, and was nowhere on the list. How can that bakery prove that but for the race of the owners, they would have gotten the deal with the restaurant? Well, and I guess this takes us to this next level in terms of trying to understand this question of who the hiring authority is, which I spoke with your friend a little bit about. So why is it wrong, at least for purposes of summary judgment under Section 1981, that the higher-ups could taint somehow in terms of the policies and the discussions that they're having? Again, for purposes of creating a circumstantial case, Ms. Lee's hiring decisions, that she was feeling that pressure from higher-ups. In other words, when we look at a hiring authority, do we just draw the line in the org chart for the person who's making the decision-maker, or do we include the CC line? Do we include the BCC line? Do we include the reporting pieces? Help me figure that line out in this context. So, Judge Johnstone, in a hypothetical case where higher-ups direct the decision-maker, you must do X, Y, or Z, I think that a case could be made that the racial animus of higher-ups would be imputed to the decision-maker. That's not the case here. Patty Lee testified that no one told her who to hire. No one told her to consider race or gender or any other factor, that she made the decisions primarily based upon the fact that she'd worked with certain people, in the case of two of the camera operators, and that she had always wanted to work with Crenshaw, and in the case of Hinosa, that she knew through referral sources that he was quite good and that he was seeking out a position. So this is not the case where a higher-up has directed the decision-maker to discriminate. And there's doctrine to address that, the cat's paw doctrine. Is there a genuine dispute here as to whether Cecil and Green could have said, if there had been a different slate presented, could have said, no, go back, do it again, remember the commitment? There's no evidence of that in the record, Your Honor. That's a hypothetical, what they may or may not have done. The case here is that they didn't even know the races of the people that Ms. Lee was putting forward. That's in the record. And so Ms. Lee selected her candidates. No evidence that she selected those candidates based on race at all. In terms of the commitment, there's no evidence that she'd even seen the commitment. Do you know the answer to the question I asked plaintiff's counsel, which is that the commitment contemplates that there will be some implementation plan? Is there anything in the record about whether there was such a plan? There's no evidence of any plan, Your Honor. And I will also add that this issue of camera X and Ms. Crenshaw being his replacement is completely incorrect. And it is incorrect for this reason. There's evidence in the record, and this is supplemental excerpts of record 68, paragraph 4, that in fact on the ranch, which was a prior production that Mr. Armstrong worked on, Mr. Armstrong was camera A and Ms. Crenshaw was camera X. The exact position that Mr. Armstrong claims that he should have received on Bob Hart Abishola. And so he is elected to argue here that Ms. Crenshaw, quote, replaced him because Ms. Crenshaw is African American. If, in fact, Ms. Crenshaw were on a different camera and one of the Caucasian identifying individuals were camera X, I imagine that Mr. Armstrong would have pointed out that Crenshaw is on camera A and I should have been hired for camera A. He has selected Ms. Crenshaw as his target because that's the only way he can support his section 1981 claim. So in short, though there is some evidence of racial related remarks on the pilot, and the plaintiff has repeatedly conflated those remarks with the series, there is no evidence at all of any racial related motivations on the series itself. And the pilot had different producers than the series and the pilot had a different director of photography than the series. And they were treated, and as a matter of evidence in the record, they were completely separate productions. And so the, quote, circumstantial evidence that Mr. Armstrong relies upon to try to buttress his claims is actually not evidence at all And the evidence here is that on the series itself, Patty Lee's decisions were entirely grounded on the skills and abilities and experience and referrals that she received for the four camera operators that she selected. Unless the panel has any other questions, I'm prepared to submit. Thank you, counsel. If there's not, thank you very much. So the defense, the other side has just conceded that where you have racial animus with upper levels, you can impute that to the lower level person who's actually making the offer. So they've conceded that point. And I have so much, there's so much evidence in the record about the higher ups with that unlawful motivation. Next, you can look at, you have to look at the promise that Chuck Lorre and the president of Warner Brothers made to the plaintiff, that he would continue working on to the next show when you look at the actions of Patty Lee. So that further shows, you know, discriminatory animus of higher ups, because you have the president and the executive, the most successful executive producer of the studio promising him personally that he would work on the next show. Then the commitment comes out and he's the person of color has the position instead of him. After all the other evidence and the e-mails that implementing the not not officially not through an official. But the e-mails implementing the commitment, how many black people are on your list? I don't want them all white. That's implementation of the commitment. And then further, you don't even have to isolate Patty Lee as the decision maker. If you look at the but for cause of plaintiff not working on the show because Steve Silver was replaced by Patty Lee in the first place. So let's say you have an all like a team who's an all white team. And you say, because of this new policy, I want more people of color. And I know that this team works together. And by getting rid of the leader of the team, I'm going to get rid of the subordinate of the team. That's still but for if that initial decision to get rid of the leader was made based on race. And as Christie Cecil admitted in the e-mail, he didn't get the job because they replaced Steve Silver with Patty Lee. All right. Thank you. So we've heard that you heard your argument. OK, thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: RAWLINSON, MILLER, JOHNSTONE